IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CHARLES LEE NEAL, II,

      Plaintiff,

v.                                    Case No. 3:24-cv-00493

OFFICER C. A. VARIEN, OFFICER
TOLER, MAGISTRATE STEVE TARBETT,
MAGISTRATE MELANIE SANG, WESTERN
REGIONAL JAIL TRANSPORTATION, and
JUDGE RICHARD TATTERSON,

      Defendants.

## MEMORANDUM OPINION and ORDER

      Pending before the Court are the following documents: an Application by Plaintiff to Proceed without Prepayment of Fess or Costs, (ECF No. 1), and numerous letter-form motions to expedite, for a hearing, and for witnesses, (ECF Nos. 8, 10, 11, 14, 15, 16, 17, 18). For the reasons that follow, these motions are **DENIED**. Plaintiff is further **ORDERED** to file, within sixty days, a correct and complete Application to Proceed Without Prepayment of Fees and Costs or pay the $405 filing fee and to amend his Complaint as further described herein.

## I. Relevant History

      Plaintiff, Charles Lee Neal, II, is currently an inmate at Western Regional Jail and Correctional Facility in Barboursville, West Virginia. On September 11, 2024, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of West Virginia. (ECF No. 3). Although Plaintiff's handwriting is extremely difficult to decipher, it appears his complaint consists of criticism of events

surrounding an arrest that occurred in May 2020, a jail sentence that occurred from February 2021 to May 2021, and an undated event related to a civil complaint Plaintiff filed in state magistrate court. Plaintiff has also drafted numerous handwritten letters as additional documentation in support of his complaint, (ECF Nos. 5, 6, 7, 9), and various letter form motions, (ECF Nos. 8, 10, 11, 14, 15, 16, 17, 18), in which he repeatedly regurgitates the same "facts" and allegations. The named defendants include Officer C.A. Varien, Officer Toler, Magistrate Steve Tarbett, Magistrate Melanie Sang, Western Regional Jail Transportation, and Judge Richard Tatterson (hereinafter the "Officer Varien matter").

The undersigned notes that Plaintiff simultaneously filed a separate § 1983 action against Western Regional Jail, Administrator Carl Aldridge, the State of West Virginia, Kyle Moore, Sergeant Tyler Deweese, Steve Tarbett, and Governor Jim Justice. *Neal v. Western Regional Jail, et. al.,* Case No. 3:24-cv-00494 (hereinafter "the WRJ matter"). Plaintiff includes allegations for both matters (the WRJ matter and the Officer Varien matter) in the documents filed in this case.

From a cursory review of the numerous handwritten documents, it appears that, relevant to the Officer Varien matter, Plaintiff is alleging that Defendant Toler relied upon a "bad West Virginia Code" and a "bad NCIC report" in his May 2020 Criminal Complaint; that Defendant Varien listed incorrect charges in a February 2021 Criminal Complaint; that Plaintiff was incorrectly charged because the name used was "Charles Lee Neal Jr" instead of "Charles Lee Neal II"; and that there was an issue with fingerprints and/or state identification; that he served six days more than he should have on two six-month concurrent sentences, presumably from these two criminal complaints; and that he filed a civil complaint that he apparently believes was improperly dismissed by the Magistrate

2

and Judge Defendants. (*See e.g.* ECF Nos. 3 at 4-5, 5 at 1, 9-1). It appears that Plaintiff made no allegations against the Western Regional Jail Transportation defendant.

This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having performed an initial review of the complaint and the numerous motions filed by Plaintiff pursuant to 28 U.S.C. § 1915(e)(2), the undersigned finds certain deficiencies in pleading that must be corrected by Plaintiff before this action can proceed.

## II. <u>Deficiencies in the *In Forma Pauperis* Application</u>

In this district, an *in forma pauperis* application (or Application to Proceed Without Prepayment of Fees and Costs) is not complete until the institution of incarceration has completed the certificate located at the bottom of page 2 of the Application, or the prisoner has submitted a transaction record of his inmate account. By obtaining this certification or transactional record, the court can verify whether the prisoner is entitled to proceed *in forma pauperis.*

Here, although Plaintiff completed the first portion of the application, the Certificate at the bottom of page 2 is blank, and Plaintiff failed to provide a copy of his transaction record of his inmate account. It appears Plaintiff was housed at William R. Sharpe, Jr. Hospital at the time of filing, but he has since been transferred to Western Regional Jail and Correctional Facility. (ECF Nos. 1, 1-1).

Therefore, the court **ORDERS** Plaintiff to fully complete, sign, and submit to the court within **sixty (60) days** an Application to Proceed Without Prepayment of Fees and Costs that includes the completed Certificate at the bottom of page two. The form will be

provided to Plaintiff by the Clerk of Court. In the alternative, Plaintiff may pay the filing fee of $405.

## III.  <u>Deficiencies in the Complaint</u>

As previously stated, in keeping with 28 U.S.C. § 1915(e)(2), the undersigned preliminarily reviewed Plaintiff's complaint to determine if the action is frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Although *pro se* complaints, such as the one filed in this case, must be liberally construed to allow the development of potentially meritorious claims, the court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). At the same time, to achieve justice, the court may allow a *pro se* plaintiff the opportunity to amend his complaint in order to correct deficiencies in the pleading.  *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978).

### *Pleading Requirements*

Federal Rule of Civil Procedure 8 sets forth the general rules of pleading. According to Rule 8, a complaint must contain "a short and plain statement of the grounds for a court's jurisdiction ... a short and plain statement of the claim showing that the pleader is entitled to relief ... and a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). The operative words here are "short" and "plain." An unnecessarily detailed and repeated recitation of seemingly unrelated events renders a complaint unintelligible.

4

Federal Rule of Civil Procedure 10 addresses the form of pleadings. Rule 10 requires the complaint to name all of the parties. Fed. R. Civ. P. 10(a). Under 42 U.S.C. § 1983, parties must be individuals, not units or entities. *Perrin v. Nicholson*, 2010 U.S. Dist. LEXIS 105121, at *4 (D.S.C. 2010); *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999). Therefore, a group like "Western Regional Jail Transportation" is not a properly named defendant. Plaintiff must identify as a defendant a specific person who, while acting under color of state law, deprived the plaintiff of a federally protected civil right, privilege, or immunity. *Id.*

In addition to naming persons as parties, Plaintiff is required to state his claims in numbered paragraphs, "each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Along that line of thought, Federal Rule of Civil Procedure 20 discusses the parties that may be joined as defendants in the same action. According to Rule 20(a)(2), individuals may be joined as defendants in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with the respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any questions of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Here, although Plaintiff's complaint is not entirely clear, he asserts claims against two officers for separate criminal complaints and complains of an extended jail sentence as well as the dismissal of a civil complaint. While these claims may arguably arise out of the same transaction or series of transactions and may share common questions of law or fact, it is unclear if all his claims in this action are plainly related. Additionally, as stated herein, Plaintiff simultaneously filed another § 1983 action, and Plaintiff includes the "facts" and allegations from both actions in each letter

form motion and handwritten documentation filed in support of his Complaint. Accordingly, Plaintiff must determine which claims are related and share common issues of law or fact and then join those claims and defendants in one action and include *only* the relevant facts and allegations for that specific matter. Allegations concerning the other matter must be drafted and filed separately for that case.

### Statute of Limitations

The undersigned further notes that Plaintiff's claims may be barred by statute of limitations or immunity. A court may raise a statute of limitations defense *sua sponte* when a complaint is filed *in forma pauperis* pursuant to 28 U.S.C. § 1915. *Webb v. Hundly*, 2023 WL 4998587 (E.D.N.C. February 2, 2023) (not reported) (citing *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 (4th Cir. 2006) (citation omitted); *see also McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010); *Mutafis v. North Central Regional Jail*, No. 5:20-cv71, 2020 WL 4590024, at *3 (N.D.W. Va. May 26, 2020), adopting R&R, 2020 WL 4587514 (N.D.W. Va. Aug. 10, 2020); *Fuewell v. Thompson*, No. 4:12-cv-1004-RBH, 2014 WL 30015, at *2 (D.S.C. Jan. 3, 2014); *Hurst v. State Farm Mut. Auto. Ins. Co.*, No. 7:05-CV00776, 2007 WL 951692, at *2, n.5 (W.D. Va. Mar. 23, 2007), aff'd, 324 F. App'x 250 (4th Cir. 2009); *Jones v. Bock*, 549 U.S. 199, 215 (2007) (citing *Leveto v. Lapina*, 258 F.3d 156, 161 (C.A. 3 2001))).

In an action brought pursuant to 42 U.S.C. § 1983, the statute of limitations is determined by the law of the State in which the action is brought, while federal law governs when the limitation period accrues. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *A Society Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011). To the extent Plaintiff is alleging claims of false arrest or false imprisonment against these defendants, these claims are subject to a one-year statute of limitations under West Virginia law.

*Brown v. Belt*, No. 2:15-CV-11549, 2019 WL 1302627, at *6 (S.D.W. Va. Mar. 21, 2019) (applying one year statute of limitations to false arrest claim); *Coss v. Blatt*, No. 2:18-CV-1199, 2019 WL 357979, at *3 (S.D.W. Va. Jan. 29, 2019) ("Under West Virginia law, tort claims for false arrest have a strict one-year statute of limitations that accrue when the false arrest occurs."); *Kanode*, 2015 WL 9589729, at *3 (applying one year statute of limitations to claims of false arrest and false imprisonment). The limitations period for Plaintiff's false arrest claim began when Plaintiff was arrested, and the false imprisonment claim accrued when he was detained pursuant to legal process. *Frederick v. W. Virginia Dep't of Health & Human Servs.,* No. 2:18-CV-01077, 2019 WL 1198027, at *39 (S.D.W. Va. Feb. 15, 2019), *report and recommendation adopted,* 2019 WL 1173358 (S.D.W. Va. Mar. 13, 2019), *reconsideration denied,* 2019 WL 1748532 (S.D.W. Va. Apr. 18, 2019) (stating that the one-year statute of limitations for a claim of false arrest begins to run on the date of the alleged false arrest and claim of false imprisonment accrues when a criminal defendant is detained pursuant to legal process).

In this case, it appears Plaintiff was arrested pursuant to a criminal complaint on or about May 29, 2020, and again on February 15, 2021. The one-year statute of limitations on a false arrest claim began on those dates and would have expired on May 29, 2021, and February 15, 2022, respectively. Plaintiff has provided no dates regarding the legal process related to his false imprisonment claim, other than that he was incarcerated from February 2021 to May 2021. However, even assuming, arguendo, that his statute of limitations began as late as May 2021, it would have expired in May 2022. Plaintiff did not file his Complaint until September 11, 2024, which would have been more than two years beyond the expiration of the statute of limitations for Plaintiff's claims.

### *Immunity*

Additionally, it is unclear what claims Plaintiff is bringing against Magistrate Tarbett, Magistrate Sang, and Judge Tatterson, aside from a brief mention of an undated civil complaint being dismissed. However, Plaintiff is advised that his claims against these defendants may be barred by judicial immunity pursuant to the Eleventh Amendment and judicial immunity.

The Eleventh Amendment provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the United States Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Amendment protects both the State, itself, and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will* 491 U.S. at 70); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

 "The question of whether an agency or a state official is properly considered an arm of the state and, therefore, entitled to Eleventh Amendment immunity, is a question

of federal law." *Coonts v. Randolph Cty. Circuit Court Judge*, No. 2:15-CV-21, 2015 WL 12791398, at *2 (N.D.W. Va. Sept. 18, 2015) (citing *Regents of the Univ. of Calif, v. Doe*, 519 U.S. 425 (1997)). To determine whether an official is an arm of the state, the Fourth Circuit applies a four-factor test, which considers "whether the state treasury will be responsible for paying any judgment that might be awarded ... [W]hether the entity exercises a significant decree of autonomy from the state, whether it is involved with local versus statewide concerns, and how it is treated as a matter of State law." *Id.* The inquiry necessarily begins with the first factor because "the most important consideration is whether the state treasury will be affected." *Id.* (citations omitted). Importantly, "[t]he Eleventh Amendment protects the State from the risk of adverse judgments even though the State may be indemnified by a third party." *Id.* (citing *Regents of the Univ. of Calif, v. Doe*, 519 U.S. at 431).

In *Kentucky v. Graham,* the Supreme Court addressed circumstances under which a State official was entitled to Eleventh Amendment sovereign immunity, finding that not all State officials qualified. *Id., 473* U.S. 159, 165-66 (1985) The Court made a distinction between officials acting in their official capacities and officials acting in their personal capacities under color of state law. *Id.*; *see also Hafer v. Melo,* 502 U.S. 21 (1991). The Court concluded that an official sued in his official capacity was entitled to sovereign immunity, while an official sued in his personal capacity was not. As the Court explained, the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, and the target of the claim is the entity's "policy or custom," not the individual official. *Hafer,* 502 U.S. at 25 (citing *Graham,* 473 U.S. at 166). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

9

The determination of whether a defendant has been named in his official or individual capacity is generally made by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.,* 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935 (1998). "[A] plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows,* 66 F.3d 56, 60 (4th Cir. 1995). However, "[w]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. In *Foreman v. Griffith*, the Fourth Circuit discussed the significance of the factors outlined in *Biggs*:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Finally, with respect to the course of proceedings, the *Biggs* court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 F. App'x 432, 435 (4th Cir. 2003). Ultimately, "the underlying inquiry remains whether the [p]laintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs*, 66 F.3d at 61.

Turning to quasi-judicial and judicial immunity, it is well-settled that "judges are absolutely immune from suit for a deprivation of civil rights brought under 42 U.S.C. § 1983" even if such acts were allegedly done maliciously, corruptly, or in bad faith and no matter "how erroneous the act may have been, and however injurious in its consequences

10

[the judicial act] may have proved to the plaintiff." *King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992) (citations omitted); *Plotzker v. Lamberth*, No. 3:08-cv-00027, 2008 WL 4706255, at \*4 (W.D. Va. Oct. 22, 2008) (citations omitted). This long-standing common law doctrine is "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Judicial immunity ensures that while a judge's actions are "subject to correction on appeal or other authorized review," they do "not expose him to a claim for damages in a private action, or put him to the trouble and expense of defending such an action." *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985). "Magistrates are judicial officers, and are thus entitled to absolute immunity under the same conditions as are judges." *Id*.

Further, the "doctrine of quasi-judicial immunity applies to non-judicial officers 'performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune.'" *Ward v. Plymale*, No. 3:12-cv-06186, 2013 WL 6164277, at \*16 (S.D.W. Va. Nov. 25, 2013) (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994); *see also Jackson v. Houck*, 181 Fed. Appx. 372, 373 (4th Cir. 2006) ("Absolute immunity applies to all acts of auxiliary court personnel that are basic and integral parts of the judicial function.") (internal quotations omitted). "The doctrine of absolute quasi-judicial immunity has been adopted and made applicable to court support personnel such as [court] clerks because of the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." *Boyd v. KLLM Transp. Servs. Inc.*, No. 3:10-3208-JFA-PJG, 2011 WL 8318383, at \*3 (D.S.C. Feb. 8, 2011) (internal quotations omitted).

There are only two conditions in which judicial immunity does not apply to bar a §
1983 claim for damages: (1) if the judge acted in the "clear absence of all jurisdiction" or
(2) the judge's action was not a "judicial act." *King*, 973 F.2d at 356-57. Under the first
option, "[a] distinction is drawn between acts that are performed in 'excess of jurisdiction'
and those performed in the 'clear absence of all jurisdiction over the subject-matter,' with
the former type of act accorded immunity." *Id*. Therefore, the question is "whether at the
time [the judge] took the challenged action he had jurisdiction over the subject matter
before him, and, in answering that question, the scope of the judge's jurisdiction must be
construed broadly." *Id. at 357* (internal quotations and markings omitted). In
determining whether the act at issue was a "judicial act," the Court examines "whether
the function is one normally performed by a judge, and whether the parties dealt with the
judge in his or her judicial capacity." *Id*. Notably, "the absolute immunity extended to a
judge performing a judicial action is not in any way diminished even if his or her exercise
of authority is flawed by the commission of grave procedural errors." *Id*. Such "errors do
not render the act any less judicial, nor permit a determination that the court acted in the
absence of all jurisdiction." *Id*.

### One Single Document

Finally, the undersigned notes that Plaintiff has filed numerous letters in support
of his Complaint, some of which raise new allegations or provide additional explanation.
Plaintiff is advised that he should include *all* allegations and facts relevant to his claims
in one singular Complaint and refrain from filing additional documents afterwards.

### Summary

Based on the foregoing, Plaintiff is **ORDERED**, within **sixty (60) days** of the
date of this Order, to file an amended complaint under 42 U.S.C. § 1983 on the proper

form, which will be provided by the Clerk of Court. The amended complaint shall include the names of the individual defendants who, acting under color of state law, violated Plaintiff's federal civil or constitutional rights. To the extent known to Plaintiff, the amended complaint shall include the addresses of the defendants. The amended complaint shall contain short and plain statements, *arranged in numbered paragraphs*, setting forth the basic facts upon which Plaintiff's claims are based, including what constitutional right the named defendant has violated, the dates of these occurrence, and the actions of the named defendant that caused the violation. The amended complaint may include claims and defendants that are connected by an event or series of events or transactions and that share common issues of fact or law. Plaintiff is further advised to either type or ensure his handwriting is legible in all future filings and reminded to include *only* the allegations relevant to the subject case.

Further, if Plaintiff wishes to file more than one complaint, he should bear in mind that 28 U.S.C. § 1915 governs actions in which a prisoner seeks to proceed *in forma pauperis*. Section 1915(g) of the statute includes a "three strikes" rule, stating as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Consequently, Plaintiff may wish to carefully review his prospective cases before he files them to decide if they all meet the requirements of a § 1983 action. The amended complaint shall not contain extraneous or unnecessary information or attachments. It shall clearly and simply state the relief requested. Should Plaintiff, after review, decide he no longer wishes to pursue his claims, he should file a Notice of Voluntary Dismissal.

**Plaintiff is hereby given notice that a failure to file the Application to Proceed Without Prepayment of Fees and Costs and amend his complaint as ordered may result in a recommendation that the complaint be dismissed for failure to state a claim cognizable under 42 U.S.C. § 1983 and/or for failure to prosecute under Fed. R. Civ. P. 41 and L. R. Civ. P. 41.1.**

## IV.  Other Motions

Turning to Plaintiff's other motions, Plaintiff has filed eight letter-form motions, requesting a "speedy trial," a hearing or court date, to expedite, and for "the State to get witnesses." Because these motions concern the originally filed Complaint, these motions are **DENIED** as **MOOT**.

Moreover, concerning Plaintiff's motion for a speedy trial, (ECF Nos. 8, 18), to the extent Plaintiff is attempting to assert his Sixth Amendment right to a speedy trial, Plaintiff is hereby advised that the constitutional right to a speedy trial is applicable only in criminal cases, and thus, Plaintiff has no constitutional right to a speedy trial in this civil action. Construing Plaintiff's motion as a motion to expedite instead, Plaintiff is advised that civil actions are reviewed in the order in which they are filed, and Plaintiff has failed to show good cause for expedited review.

Further, a hearing is not appropriate at this stage of the proceedings, and his motions for such should be denied. (ECF Nos. 10, 11, 14, 15, 17). As ordered herein, Plaintiff is to file an amended complaint that legibly, succinctly, and completely describes the allegations concerning the violation of his civil rights. He is also to either pay the filing fee or file a complete and correct application to proceed without prepayment of costs.

Plaintiff's motion for witnesses, (ECF No. 16), is also premature and inappropriate. In his motion, Plaintiff claims, "it is of the importance for the State Representative of this

case to get witnesses and there [sic] names because I do not have the ability to do so and it is up to the State and you, your Honor to do so." Discovery has not yet been initiated in this case, and even if it had started, the Court cannot compel the State to secure witnesses on Plaintiff's behalf, nor does the Court perform discovery tasks for any party to a civil action. Rather, each party is obligated to conduct its own discovery. Furthermore, assuming Plaintiff is filing a motion to compel, this type of motion is only appropriate after discovery requests have been correctly served on a party, have not been timely or completely answered, and a meet-and-confer session has failed to resolve the outstanding issues. At some point, if discovery opens in this matter, Plaintiff will have to request subpoenas from the Clerk of Court and will have to serve the non-parties with the subpoenas.

Plaintiff is reminded of his obligation to notify the Clerk of Court of any changes in his address.

The Clerk is directed to provide a copy of this Order to Plaintiff, along with an Application to Proceed Without Prepayment of Fees and Costs, a § 1983 complaint form, instructions for filing the complaint, an Authorization for the Release of Institutional Account Information and to Pay Fee, and the Explanation of Filing Fees.

**ENTERED:** March 31, 2025

Joseph K. Reeder
United States Magistrate Judge